TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00013-CR






Eric Christopher Everroad, Appellant




v.




The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT


NO. 0982239, HONORABLE BOB PERKINS, JUDGE PRESIDING







 Eric Christopher Everroad appeals from his conviction for murder. Tex. Penal
Code Ann. § 19.02(b) (West 1994). The jury found appellant guilty and assessed punishment at
life imprisonment in the Texas Department of Criminal Justice--Institutional Division and a
$10,000.00 fine. The jury also made an affirmative finding that appellant used a deadly weapon
in the commission of the offense. We will affirm.


Factual and Procedural Background



 Because appellant does not challenge either the legal or factual sufficiency of the
evidence to support his conviction, we will outline the facts only briefly. Heather (the victim),
a friend of Heather's, and appellant played pool during the afternoon of the murder. The victim
went home with appellant. At his apartment, they ate, watched television, and ultimately fell
asleep in the same bed. At some point before ten or eleven p.m., appellant bludgeoned the victim
to death with a jack handle. Appellant wrapped her body in bed linens, made a futile attempt to
clean up, changed into clean clothes, and left. Appellant called his roommate, Patrick Haberman,
at work the next day, said that he had "screwed up bad," told Haberman not to go into appellant's
bedroom, and told Haberman that he might go to Mexico. When Haberman arrived home after
work, he went into the bedroom, discovered the body, and called police. Appellant eventually
turned himself in and confessed to the crime. In the confession, he claimed that he had been
having a nightmare that an abusive uncle with whom he had once lived was attacking him, awoke
to find the victim dead, panicked and fled.

 Appellant brings two points of error: (1) the trial court erred in admitting evidence
that police found a pair of handcuffs under appellant's bed because the search warrant did not
specifically name "handcuffs" as an item for which the police were searching and (2) the trial
court erred in overruling appellant's objection to the state's jury argument.


Handcuff Evidence



 Appellant complains that the admission of a photograph of handcuffs found under
his bed was improper because "handcuffs" were not named in the search warrant and so were
improperly seized. After the body was discovered, police secured a search warrant to search
appellant's portion of the apartment, including his bedroom. Appellant filed a motion to suppress
evidence obtained during the search. The court held a pretrial hearing on appellant's motion to
suppress and overruled the motion.

 The Code of Criminal Procedure provides that only the specifically described
property or items set forth in a search warrant may be seized. Tex. Code Crim. Proc. Ann. art.
18.01(d) (West Supp. 1999). A search warrant must "identify, as near as may be, that which is
to be seized and name or describe, as near as may be, the person, place, or thing to be searched;
. . . ." Id. art. 18.04(2).

 A search warrant may be issued to search for and seize property or items that are
evidence of an offense or items that tend to show that a particular person committed an offense. 
Id. art. 18.02(10). To justify the issuance of a search warrant under article 18.02(10), there must
be a supporting affidavit setting out sufficient facts to establish probable cause that a specific
offense has been committed, that the specifically described property or items that are to be
searched for or seized constitute either evidence of that offense or evidence that a particular
person committed that offense, and that the property or items constituting evidence to be searched
for or seized are located at or on the particular person, place, or thing to be searched. Id. art.
18.01(c); Davis v. State, 831 S.W.2d 426, 440 (Tex. App.--Austin 1992, pet. ref'd).

 Appellant complains that the handcuffs were not "specifically described property"
because the warrant authorized the seizure of "ligatures." We disagree. The affiant attested in
the supporting affidavit that he knew from experience and training that "when a person is
assaulted instruments are used to help keep the victim quiet; these instruments are ligatures and
items capable of tying the victim." The judge concluded that the definition of "ligature" was
broad enough to encompass handcuffs.

 The litigants do not cite any cases that construe the term "ligature." Its ordinary
meaning is: "something that is used to bind." Webster's Third New International Dictionary
1307 (Philip B. Gove ed., 1986). The supporting affidavit for the search warrant referred in
general terms to "ligatures and items capable of tying the victim." Therefore, the court did not
abuse his discretion in finding that the handcuffs were encompassed by the ordinary meanings of
the terms "ligature" and "items capable of tying" as used in the search warrant and affidavit. 
Given that the handcuffs themselves were covered by the warrant, a photograph of those items at
the crime scene was admissible.

 The State also argues that, even if "ligature" did not encompass "handcuffs," their
seizure was justified under the principle that, in some instances, "mere evidence" which is not
listed in a warrant may be discoverable. See Warden, Maryland Penitentiary v. Hayden, 387 U.S.
294, 306 (1967). We agree. Officers may seize mere evidence when the objects discovered and
seized are reasonably related to the offense under investigation and the discovery is made in the
course of a good faith search conducted within the parameters of a valid search warrant. Id. at
306-07. The handcuffs were evidence connected with a crime. The police officers were legally
on the premises. The handcuffs were discovered under the same bed from which the officers
removed the victim and were found in a place where the officers might reasonably have been
searching for the enumerated items in the search warrant. See United States v. Ross, 456 U. S.
798, 820-22 (1982). (1) As such, they were properly seized.

 The trial court did not abuse its discretion in admitting the photograph of the
handcuffs. We overrule appellant's first issue.


 Closing Argument



 In his second point of error, appellant contends that the trial court erred in
overruling appellant's objection to the State's closing argument. Appellant complains of the
State's argument that no one, not even his first defense counsel, believed appellant's story that he
had killed the victim while having a nightmare about an uncle attacking him:


None of his friends. That's why he had to tell his wife-to-be Stacey his second
story about James breaking into the house. They didn't believe . . . this old man
who used live [sic] with, he didn't apparently believe, because when means no one
[sic], I mean no one. Even his attorney, Betty Blackwell, who took his
information initially to their expert, and who got an opinion on this dream --


[Objection/Bench Conference/Objection Overruled]



Even Betty Blackwell, the first attorney he had, the doctor expert testified didn't
come to him to talk about this. And the defendant says she didn't believe
him . . . .



(Emphasis added.)

 Proper jury argument must fall within one of the following categories: (1)
summary of the evidence; (2) reasonable deduction from the evidence (3) response to opposing
counsel's argument; and (4) pleas for law enforcement. Lagrone v. State, 942 S.W.2d 602, 619
(Tex. Crim. App. 1997); Borjan v. State, 787 S.W.2d 53, 55 (Tex. Crim. App. 1983). Counsel
is generally afforded wide latitude in drawing inferences from the record, as long as such
inferences are reasonable and offered in good faith. Denison v. State, 651 S.W.2d 754, 761-62
(Tex. Crim. App. 1983). The State contends that the argument was proper as a summary of the
evidence and reasonable deductions therefrom. We agree.

 Appellant's roommate at the time of the offense, Patrick Haberman, testified that
the appellant called him from jail and told him that he (appellant) was innocent and that he thought
someone broke into the window in his room and committed this murder and that he woke up
covered in blood. Haberman testified that he thought appellant was "trying to make up a story
for what happened."

 Stacy Pankratz, appellant's girlfriend at the time of the offense, testified that
appellant told her two different versions of what happened: the "dream" version and a version
in which he said that the person with whom they had been playing pool murdered her and that
appellant got blood on his clothes when he tackled the perpetrator as he was running out the door. 
Appellant said he thought his roommate left the front door open, allowing the perpetrator to get
into his room. Appellant also told his stepfather the same two versions of the story.

 Appellant testified that when he told Pankratz what had happened, she responded
that he could not have done something like that when he was dreaming. Appellant told Pankratz
another version of what had happened because nobody, including Pankratz, believed him that it
happened during a bad dream. He testified that his first attorney and other people did not believe
that he had committed the offense during a bad dream. Appellant accused someone else of
committing this offense because nobody believed his first explanation. He felt alone, confused,
and that nobody trusted or believed him so he made up another story of what happened. Appellant
admitted making up another version of what happened because he was trying to get out of what
he had done.

 On cross-examination, appellant reiterated that no one believed his dream defense,
not even his former attorney. Appellant created the second version because nobody believed his
dream defense, but no one believed the second version either.

 A jury argument may not encourage the jury to base its decision on speculation that
the attorneys were parties to evidence that they had not heard or imply that the jury should rely
on an attorney's special expertise. See Fowler v. State, 500 S.W.2d 643, 643-44 (Tex. Crim.
App. 1973); Buffington v. State, 801 S.W.2d 151, 157-58 (Tex. App.--San Antonio 1990, pet.
ref'd), cert. denied, 501 U.S. 876 (1991). The State's argument did not violate that principle 
because it was based on evidence in the record. Appellant had testified that all of the people
named by the State did not believe him. The State's argument did not improperly encourage the
jury to base its decision on speculation that the attorneys were parties to evidence that the jury did
not hear. We overrule appellant's second issue.


Conclusion


 We have overruled both of the issues appellant brings on appeal. Accordingly,
we affirm the conviction and sentence.



 

 J. Woodfin Jones, Justice

Before Justices Jones, Kidd and Patterson

Affirmed

Filed: November 18, 1999

Do Not Publish

1. Cf. Joseph v. State, 807 S.W.2d 303, 307-08 (Tex. Crim. App. 1991). In Joseph, an
officer seized a letter containing incriminating statements. The search warrant did not include
written or printed material. Rather the officer was searching for marihuana and testified that he
had already determined that the envelope and folds of the letter did not contain marihuana before
he read the contents. The court held the search and seizure of the letter did not come within the
scope of the search as defined in Ross.


expert testified didn't
come to him to talk about this. And the defendant says she didn't believe
him . . . .



(Emphasis added.)

 Proper jury argument must fall within one of the following categories: (1)
summary of the evidence; (2) reasonable deduction from the evidence (3) response to opposing
counsel's argument; and (4) pleas for law enforcement. Lagrone v. State, 942 S.W.2d 602, 619
(Tex. Crim. App. 1997); Borjan v. State, 787 S.W.2d 53, 55 (Tex. Crim. App. 1983). Counsel
is generally afforded wide latitude in drawing inferences from the record, as long as such
inferences are reasonable and offered in good faith. Denison v. State, 651 S.W.2d 754, 761-62
(Tex. Crim. App. 1983). The State contends that the argument was proper as a summary of the
evidence and reasonable